# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL DAVIS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:16-CV-00246-RK |
| MICHAEL BOWERSOX, et al., | ) |
| Respondents. | ) |

## ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Michael Davis' ("Davis") Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody. (Doc. 24.) Davis is currently in custody under a state court judgment and now seeks federal habeas relief. For the reasons set forth below, the Amended Petition is denied, and the Court declines to issue a certificate of appealability.

## Background

In 1996, Davis shot and killed Ronald Rosendahl. Davis was 17 years old at the time of this offense. After a jury trial in the Circuit Court of Jackson County, Missouri, Davis was convicted of first degree murder and armed criminal action. On January 29, 1998, he was sentenced to life in prison without the possibility of parole on the murder charge, and a consecutive 100 year sentence for armed criminal action. On February 23, 1999, Davis' conviction was affirmed on direct appeal. Davis did not pursue post-conviction proceedings at that time.

In 2013, Davis filed a petition for writ of habeas corpus with the Supreme Court of Missouri. Case No. SC93475. He requested that his sentence be brought in conformity with *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the United States Supreme Court held that the Eighth Amendment's prohibition on cruel and unusual punishment precludes life imprisonment without the possibility of parole for individuals under the age of 18 at the time of their offense. *Miller*, 567 U.S. at 489.[1] *Miller* found that "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity,

---
[1] The Eighth Amendment is "applicable to the States through the Fourteenth Amendment." *See Roper v. Simmons*, 543 U.S. 551, 560 (2005).

impetuosity, and failure to appreciate risks and consequences." *Id.* at 477. Consequently, "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 479.

While Davis' state habeas action was pending, the United States Supreme Court decided *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). *Montgomery* held that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." *Montgomery*, 136 S. Ct. at 732. *Montgomery* further held that:

> Giving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See, e.g.,* Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity— and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Id.* at 736.

On March 15, 2016, the Missouri Supreme Court granted Davis' habeas petition in part. The Missouri Supreme Court ordered that Davis "shall be eligible to apply for parole after serving 25 years' imprisonment on his sentence of life without parole unless his sentence is otherwise brought into conformity with *Miller* and *Montgomery* by action of the governor or enactment of necessary legislation."

On March 29, 2016, Davis filed a motion for rehearing and argued that this remedy did not satisfy the requirements under *Miller*. While Davis' motion for rehearing was pending, a new Missouri law went into effect on July 13, 2016. The new law, codified at Missouri Revised Statute § 558.047.1(1), provides that:

> Any person sentenced to a term of imprisonment for life without eligibility for parole before August 28, 2016, who was under eighteen years of age at the time of the commission of the offense or offenses, may submit to the parole board a petition for a review of his or her sentence, regardless of whether the case is final for purposes of appeal, after serving twenty-five years of incarceration on the sentence of life without parole.

Mo. Rev. Stat. § 558.047.1(1).

On July 19, 2016, the Missouri Supreme Court vacated its March 15, 2016 Order. The Order states, in its entirety, "On the Court's own motion, the Court's March 15, 2016, order is

2

vacated. The motion for rehearing is overruled as moot. The petition is denied. See Senate Bill No. 590, 98th General Assembly. All other pending motions are overruled as moot." On November 3, 2016, Davis filed a second petition for writ of habeas corpus with the Missouri Supreme Court. Case No. SC96014. In part, Davis argued that the new statute did not resolve the constitutional issues he previously raised.

On March 21, 2016, Davis filed the instant federal habeas action pursuant to 28 U.S.C. § 2254. On January 26, 2017, this Court granted Davis leave to file an amended habeas petition but also stayed all federal proceedings so that he could fully exhaust his claims under *Miller* and *Montgomery* in state court. (Doc. 23.) On April 30, 2019, the Missouri Supreme Court denied the second state habeas petition without prejudice and without any explanation. (Doc. 29-1.) This Court lifted the stay on August 20, 2019. (Doc. 30.) Respondent then filed a response opposing the amended petition (Doc. 32), and Davis filed a Traverse (Doc. 37).

Davis' amended federal habeas petition raises three separate grounds for relief. In part, he argues that the Missouri Supreme Court's denial of his petition was contrary to federal law because his sentence remains unconstitutional under *Miller* and *Montgomery*, and that Mo. Rev. Stat. § 558.047 does not cure the constitutional violations. The Respondents contend that the new statute resolves any constitutional issues, and that the statute itself is constitutional. The parties' arguments are addressed below.

## I. Discussion

Under 28 U.S.C. § 2254, a federal court cannot grant habeas relief on a claim adjudicated on the merits in state court "unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(1), (2).[2]

The "'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have independent meaning." *Penry v. Johnson*, 532 U.S. 782, 792 (2001). A state court decision is "contrary to"

---

[2] Based on the record and the parties' briefs, the Court finds that Davis' claims were adjudicated and otherwise exhausted. Counsel for Davis notes that she "is unaware of any currently available remedy for the issues raised in this amended petition" and that "the state has not raised any exhaustion defense." (Doc. 37, p. 5 n.2.)

clearly established federal law if it "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or "decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *White v. Dingle*, 757 F.3d 750, 754 (8th Cir. 2014) (cleaned up). A state court decision is an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Ali v. Roy*, 950 F.3d 572, 574 (8th Cir. 2020) (citations and quotations omitted). If the state court did not explain the rationale for the decision at issue, the federal "habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision[.]" *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The federal court must then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. *Id.*

Under § 2254, a federal court's review of a state court decision "is highly deferential." *Ali*, 950 F.3d at 574. A petitioner must show that the decision "was so lacking in justification that there is an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Fenstermaker v. Halvorson*, 920 F.3d 536, 540 (8th Cir. 2019) (cleaned up). In conducting its analysis, the federal court must "presume state courts know and follow the law." *Id.*

Before addressing Davis' arguments, the Court must first identify the state court decision at issue and the rationale upon which it was based. The Missouri Supreme Court denied Davis' first habeas petition and cited the new Missouri statute that makes him parole eligible in 25 years. The Missouri Supreme Court denied Davis' second petition without explanation. Upon review of the record, it seems apparent that the Missouri Supreme Court believed the new statute remedied any constitutional infirmities. Therefore, the issue before this Court is whether the Missouri Supreme Court's denial of relief was contrary to, or an unreasonable application of, *Miller*, *Montgomery*, and/or applicable provisions of the United States Constitution.

**A. Ground One—Whether Davis' Sentence Violates His Due Process Rights and/or His Right to Be Free From Cruel and Unusual Punishment.**

Davis' first ground for relief argues that he has been denied due process of law and the right to be free from cruel and unusual punishment because he is subject to an unlawful mandatory sentence of life without parole. This argument contains three sub-parts: (1) allowing the parole

board to change his sentence violates Missouri law (including the separation of powers) and the Due Process Clause of the United States Constitution; (2) subjecting Davis to § 558.047 violates his equal protection rights because he is not entitled to the same rights as a juvenile defendant who has not yet been sentenced; and (3) § 558.047 is an unlawful bill of attainder. (Doc. 24, pp. 7-12; Doc. 37, pp. 7-13.) Each argument is addressed in turn.[3]

### *1. The Legislative Grant of Authority to the Parol Board is Not Unconstitutional.*

Davis argues that under Missouri law, the legislature cannot give the parole board authority to change a sentence previously imposed by a Missouri court. However, as discussed above, the Missouri legislature and Missouri Supreme Court have determined otherwise. "In § 2254 proceedings, a federal court may not re-examine a state court's interpretation and application of state law." *Nunley v. Bowersox*, 784 F.3d 468, 471 (8th Cir. 2015) (quotations omitted). Therefore, Davis' argument is rejected to the extent it relies on the construction and application of Missouri law.

With respect to federal law, Davis contends that the Missouri Supreme Court's denial of his petition violates his rights under the federal Due Process Clause. Davis argues that he "is entitled to the benefit of Missouri law as applied to other litigants," and appears to argue that federal law requires a resentencing, not a parole hearing. Upon review of the record and applicable law, the Court rejects these arguments.

*Montgomery* expressly recognized that *Miller* "does not require States to relitigate sentences . . . [a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 136 S. Ct. at 736. As an example of such a remedy, *Montgomery* cited a Wyoming statute which, like Missouri, makes juvenile homicide offenders eligible for parole after 25 years. *Id.* (citing Wyo. Stat. Ann. § 6-10-301(c) (2013)). *Montgomery* is the most applicable and controlling federal authority on this issue, and it disposes of Davis' argument.

Despite *Montgomery*, Davis relies on *State v. Nathan*, 404 S.W.3d 251 (Mo. 2013) and *State v. Hart*, 404 S.W.3d 232 (Mo. 2013). He contends that under *Nathan* and *Hart*, a jury must decide whether juvenile offenders should be sentenced to life without parole. (Doc. 37, pp. 8-9.) However, *Nathan* and *Hart* were both decided on direct appeal, before *Montgomery* was handed down, and before enactment of the new Missouri statute that makes Davis eligible for parole.

---

[3] Many of Davis' arguments are unclear. The following attempts to decipher and address each argument presented.

5

Under these circumstances, *Nathan* and *Hart* are not persuasive on the issues currently before the Court.

For similar reasons, the Court rejects Davis' reliance on *Hicks v. Oklahoma*, 447 U.S. 343 (1980), and *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1983). (Doc. 24, p. 9; Doc. 37, pp. 9-10.) Those cases did not address the constitutionality of juvenile sentences, were decided prior to *Miller* and *Montgomery*, and prior to enactment of the new Missouri statute. Consequently, *Hicks* and *Rust* do not assist the Court in determining whether the Missouri Supreme Court's denial of relief was contrary to, or an unreasonable application of, clearly established federal law.

### *2. Davis' Equal Protection Arguments Do Not Warrant Habeas Relief.*

Davis argues that the new Missouri statute violates his equal protection rights. He contends that juvenile offenders may be resentenced if their sentences are not yet final, but that resentencing is not available to him and others whose sentences are final. (Doc. 24, p. 10; Doc. 37, pp. 10-12.)

"The Equal Protection Clause of the Fourteenth Amendment provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws[.]'" *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (citing U.S. Const. amend XIV, § 1.)) "The Equal Protection Clause demands that similarly situated individuals be treated alike." *Id.* The Equal Protection Clause thus protects individuals against "intentional and arbitrary discrimination." *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 976 (8th Cir. 2016). However, it "does not guarantee that all persons must be dealt with in an identical manner, and does not forbid all statutory classifications." *Id.* (quotations, citations, and alterations omitted).

On the current record, the Court finds that it is not unreasonable to draw a distinction between those individuals who have completed direct review and those who have not. Specifically, the Respondents correctly argue that "[i]t is reasonable not to resentence multiple dozens of offenders, who have long since completed direct review of their cases, when an adequate remedy approved by the United States Supreme Court can be crafted by making them eligible for parole, and the passage of time makes resentencing proceedings difficult." (Doc. 32, p. 7.)

In his Traverse, Davis argues that there are approximately 95 individuals who are serving a similar sentence, and that "[t]his is not an unmanageable number of persons to resentence." (Doc. 37, p. 11.) However, regardless of the number of individuals who may be affected, Davis' equal protection argument fails because he does not present any "evidence of discriminatory effect or purpose." *Hack v. Cassady*, 2019 WL 320586, at * 8 (W.D. Mo. Jan. 24, 2019) (denying equal

6

protection claim under similar circumstances). Davis also "fails to identify a similarly situated person who was treated better than he was treated." *Id.* Under these circumstances, Davis has not presented a colorable equal protection claim, and he has not shown that an evidentiary hearing is warranted.

### *3. Missouri Statute § 558.047 is Not an Unlawful Bill of Attainder.*

Davis argues that the Missouri Supreme Court's decision is contrary to and an unreasonable application of the Bill of Attainder Clause. *See* U.S. Const., art. I, § 10, cl. 1 (providing that "No State shall . . . pass any Bill of Attainder"); (Doc. 24, pp. 10-12; Doc. 37, p. 12). "A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial." *WMX Tech., Inc. v. Gasconade Cnty.*, 105 F.3d 1195, 1201 (8th Cir. 1997) (quotations omitted). To qualify as a bill of attainder, the law must: "(1) specify the affected persons; (2) impose punishment; and (3) lack a judicial trial." *Palmer v. Clarke*, 408 F.3d 423, 433 (8th Cir. 2005). As relevant here, "punishment" means that the "harm must fall within the traditional meaning of legislative punishment, fail to further a nonpunitive punishment, or be based on congressional intent to punish." *Planned Parenthood of Mid-Missouri and Eastern Kansas, Inc. v. Dempsey*, 167 F.3d 458, 465 (8th Cir. 1999).

Here, Missouri Statue § 558.047 is not an unconstitutional bill of attainder because it does not impose punishment on Davis. To the contrary, it provides an avenue of relief from the sentence previously imposed on him. Although Davis contends the relief is inadequate, that does not make it a punishment. Moreover, *Montgomery* expressly contemplated the type of relief adopted by the Missouri legislature. *Montgomery*, 136 S. Ct. at 736. Similarly, Davis fails to present any evidence of an intent to punish. Instead, it appears that § 558.047 was enacted with the intent of remedying sentences deemed unconstitutional by *Miller* and *Montgomery*. Under these circumstances, the Missouri Supreme Court's denial of relief was not contrary to, or an unreasonable application of, the Bill of Attainder Clause.

**B. Ground Two—Whether Davis Has Been Wrongly Denied the Right to Individualized Sentencing and a Reasonable Opportunity For Release.**

In his second ground for relief, Davis argues that he has been denied the right to individualized sentencing and a reasonable opportunity for relief as required by the United States Supreme Court. (Doc. 24, pp. 13-20; Doc. 37, pp. 14-20.) This ground for relief contains two

7

Case 4:16-cv-00246-RK   Document 39   Filed 04/15/20   Page 7 of 11

subparts: (1) the opportunity for parole is not a sufficient remedy; and (2) the new Missouri statute does not comply with *Miller* and *Montgomery*. Each subpart is addressed below.

### *1. The Opportunity for Parole is Not Contrary to, or an Unreasonable Application of, Miller and Montgomery.*

Davis argues that an opportunity for parole is not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 13-14; Doc. 37, pp. 14-15.) He contends that *Montgomery* "did not say that in *all* cases, simply allowing an opportunity for parole was enough to remedy the imposition of a mandatory life without parole sentence." (Doc. 37, pp. 14-15) (emphasis in original.) In support of this proposition, Davis relies on Justice Sotomayor's concurring opinion in *Adams v. Alabama*, 136 S. Ct. 1796 (2016). According to Davis, Justice Sotomayor "did not suggest that a parole board" could decide whether a juvenile offender had "permanent incorrigibility." (Doc. 37, p. 15.)

However, as stated above, *Montgomery* expressly held that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 136 S. Ct. at 736. This clear and explicit holding is not altered by a subsequent concurring opinion. To the extent Davis wishes to extend or otherwise enlarge the holding in *Montgomery*, that argument is not cognizable in the § 2254 context. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

### *2. The Parole Procedures Under Missouri Law Are Not Contrary to, or an Unreasonable Application of, Federal Law.*

Davis argues that the parole procedures set forth by Missouri law are not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 14-20; Doc. 37, pp. 15-20.) Davis argues that Missouri's parole statute "does not 'ensure' that a juvenile who has matured will be given an opportunity for release" because that decision rests with the discretion of the parole board. (Doc. 24, pp. 14-15.) He contends that even if mitigating factors are present, parole may be denied based solely on the "circumstances surrounding the offense." Davis also complains that only the parole board has the right to obtain additional information, that he has no right to counsel, and no right to present evidence at the parole hearing. Upon review of the record, the Court rejects these arguments.

In *Miller*, the Supreme Court found that a life sentence without the possibility of parole impermissibly fails to consider the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences," the "family and

8

subparts: (1) the opportunity for parole is not a sufficient remedy; and (2) the new Missouri statute does not comply with *Miller* and *Montgomery*. Each subpart is addressed below.

### *1. The Opportunity for Parole is Not Contrary to, or an Unreasonable Application of, Miller and Montgomery.*

Davis argues that an opportunity for parole is not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 13-14; Doc. 37, pp. 14-15.) He contends that *Montgomery* "did not say that in *all* cases, simply allowing an opportunity for parole was enough to remedy the imposition of a mandatory life without parole sentence." (Doc. 37, pp. 14-15) (emphasis in original.) In support of this proposition, Davis relies on Justice Sotomayor's concurring opinion in *Adams v. Alabama*, 136 S. Ct. 1796 (2016). According to Davis, Justice Sotomayor "did not suggest that a parole board" could decide whether a juvenile offender had "permanent incorrigibility." (Doc. 37, p. 15.)

However, as stated above, *Montgomery* expressly held that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 136 S. Ct. at 736. This clear and explicit holding is not altered by a subsequent concurring opinion. To the extent Davis wishes to extend or otherwise enlarge the holding in *Montgomery*, that argument is not cognizable in the § 2254 context. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

### *2. The Parole Procedures Under Missouri Law Are Not Contrary to, or an Unreasonable Application of, Federal Law.*

Davis argues that the parole procedures set forth by Missouri law are not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 14-20; Doc. 37, pp. 15-20.) Davis argues that Missouri's parole statute "does not 'ensure' that a juvenile who has matured will be given an opportunity for release" because that decision rests with the discretion of the parole board. (Doc. 24, pp. 14-15.) He contends that even if mitigating factors are present, parole may be denied based solely on the "circumstances surrounding the offense." Davis also complains that only the parole board has the right to obtain additional information, that he has no right to counsel, and no right to present evidence at the parole hearing. Upon review of the record, the Court rejects these arguments.

In *Miller*, the Supreme Court found that a life sentence without the possibility of parole impermissibly fails to consider the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences," the "family and

8

subparts: (1) the opportunity for parole is not a sufficient remedy; and (2) the new Missouri statute does not comply with *Miller* and *Montgomery*. Each subpart is addressed below.

### *1. The Opportunity for Parole is Not Contrary to, or an Unreasonable Application of, Miller and Montgomery.*

Davis argues that an opportunity for parole is not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 13-14; Doc. 37, pp. 14-15.) He contends that *Montgomery* "did not say that in *all* cases, simply allowing an opportunity for parole was enough to remedy the imposition of a mandatory life without parole sentence." (Doc. 37, pp. 14-15) (emphasis in original.) In support of this proposition, Davis relies on Justice Sotomayor's concurring opinion in *Adams v. Alabama*, 136 S. Ct. 1796 (2016). According to Davis, Justice Sotomayor "did not suggest that a parole board" could decide whether a juvenile offender had "permanent incorrigibility." (Doc. 37, p. 15.)

However, as stated above, *Montgomery* expressly held that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 136 S. Ct. at 736. This clear and explicit holding is not altered by a subsequent concurring opinion. To the extent Davis wishes to extend or otherwise enlarge the holding in *Montgomery*, that argument is not cognizable in the § 2254 context. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

### *2. The Parole Procedures Under Missouri Law Are Not Contrary to, or an Unreasonable Application of, Federal Law.*

Davis argues that the parole procedures set forth by Missouri law are not adequate under *Miller* and *Montgomery*. (Doc. 24, pp. 14-20; Doc. 37, pp. 15-20.) Davis argues that Missouri's parole statute "does not 'ensure' that a juvenile who has matured will be given an opportunity for release" because that decision rests with the discretion of the parole board. (Doc. 24, pp. 14-15.) He contends that even if mitigating factors are present, parole may be denied based solely on the "circumstances surrounding the offense." Davis also complains that only the parole board has the right to obtain additional information, that he has no right to counsel, and no right to present evidence at the parole hearing. Upon review of the record, the Court rejects these arguments.

In *Miller*, the Supreme Court found that a life sentence without the possibility of parole impermissibly fails to consider the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences," the "family and

8

home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional," the "circumstances of the homicide offense," and "the possibility of rehabilitation[.]" *Miller*, 567 U.S. at 477-78. *Montgomery* thus recognized that "[t]hose prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller's* central intuition—that children who commit even heinous crimes are capable of change." *Montgomery*, 136 S. Ct. at 736.

Under *Miller* and *Montgomery*, the Missouri Supreme Court's denial of relief is not an unreasonable application or, or contrary to, federal law. The new Missouri statute requires the parole board to consider the following factors:

> (1) Efforts made toward rehabilitation since the offense or offenses occurred, including participation in educational, vocational, or other programs during incarceration, when available;
>
> (2) The subsequent growth and increased maturity of the person since the offense or offenses occurred;
>
> (3) Evidence that the person has accepted accountability for the offense or offenses, except in cases where the person has maintained his or her innocence;
>
> (4) The person's institutional record during incarceration; and
>
> (5) Whether the person remains the same risk to society as he or she did at the time of the initial sentencing.

Mo. Rev. Stat. § 558.047.5(1)-(5). The statute requires the parole board to consider additional factors set forth in Mo. Rev. Stat. § 565.033.2. Among other things, those factors include the offender's age and maturity at the time of the offense, the "nature and circumstances of the offense," the offender's degree of culpability, the offender's home and family background, and the likelihood of rehabilitation. *Id.*

These provisions adequately account for the youth-related concerns identified in *Miller* and *Montgomery*, such as Davis' age and maturity, his family environment, the circumstances of the offense, and prospects for rehabilitation. *See Miller*, 567 U.S. at 477-78. Moreover, Davis' arguments misconstrue *Miller* and *Montgomery*. Federal law does not require that he be released if certain facts are present, and does not mandate specific procedural rights at the parole hearing. Instead, *Miller* and *Montgomery* require that Davis have an "opportunity for release." *Montgomery*, 136 S. Ct. at 736. Under Missouri law, Davis now has that opportunity.

9

In his Traverse, Davis argues that "the court in *Brown v. Precythe*, 2:17-cv-04082-NKL, granted declaratory and injunctive relief finding that § 558.047 is unconstitutional because it does not provide persons like Mr. Davis with 'a meaningful and realistic opportunity to obtain release[.]'" (Doc. 37, pp. 18-19.) However, *Brown* was brought as a class action (of which Davis is a class member) under § 1983 and it is currently on appeal before the Eighth Circuit. Importantly, *Brown* was not decided under the deferential standards applicable to § 2254 motions. In the § 2254 context, courts in this district have rejected arguments similar to those raised by Davis. *See Wolf v. Cassady*, 2019 WL 1089125, at * 2-3 (W.D. Mo. Mar. 7, 2019) (Harpool, J.); *Hack*, 2019 WL 320586, at * 5-8 (Smith, J.); *Ramirez v. Griffith*, No. 16-CV-1058 (W.D. Mo. Dec. 2, 2016) (Whipple, J.); *see also Saddler v. Pash*, 2018 WL 999979, at * 3 (E.D. Mo. Feb. 21, 2018).

In addition, the Respondents correctly note that "the injunction [in *Brown*] will either be upheld, or it will be overturned" on appeal. (Doc. 32, p. 13.)[4] "No matter what the result of the civil rights appeal, the class members will receive the constitutional protections. So, assuming for the sake of argument that the pre-injunction procedures were unconstitutional, Davis will receive the benefit" of that appellate decision. (*Id.*) On a related note, it does not appear that Davis has served 25 years of his sentence. Consequently, even if Davis' arguments were persuasive, "claims challenging the constitutionality of a future parole hearing are premature." *Hack*, 2019 WL 320586, at * 7.[5]

### C. Ground Three—Whether Davis' 100 Year Consecutive Sentence for Armed Criminal Action Violates the Cruel and Unusual Punishments Clause.

Although not clear, Davis appears to argue that his 100 year consecutive sentence for armed criminal action will prevent him from ever being eligible for parole. (Doc. 24, pp. 20-21; Doc. 37, pp. 20-21.) In response, Respondents argue that Davis must serve at least three years on his consecutive sentence for armed criminal action, which would make him eligible for parole after 28 years. In his Traverse, Davis "agrees that if he is in fact eligible for parole consideration after he has served 28 years, that in itself is not an additional constitutional violation." (Doc. 37, p. 21.) Nonetheless, Davis contends that "should the parole board determine not to grant him a parole

---

[4] According to the appellate docket sheet, it does not appear that briefing is complete in *Brown* and a date for oral arguments has not been set. *See Brown v. Precythe*, Eighth Circuit Case No. 19-3019.

[5] Similarly, Davis' request for an evidentiary hearing is premature.

hearing because of the consecutive sentence, that would implicate the Cruel and Unusual Punishment Clause[.]" (*Id.*)

Upon review of the parties' arguments, the Court finds that Davis has not shown that he will be ineligible for parole based on his consecutive sentence. Davis has also not shown that parole eligibility after 28 years would violate *Miller*, *Montgomery*, or other clearly established federal law. Finally, for the reasons discussed above, Davis' argument regarding the effect of his consecutive sentence is premature. *Wolf*, 2019 WL 1089125, at * 3. Consequently, Davis' third ground for relief will be denied.

## II. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court may issue a certificate of appealability only where a petitioner "has made a substantial showing of the denial of a constitutional right." This means that "reasonable jurists" could find the Court's decision "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation marks and citations omitted). For the reasons set forth above, Davis has not met this standard.

## Conclusion

Accordingly, Davis' Amended Petition Under § 2254 for Writ of Habeas Corpus (Doc. 24) is **DENIED**, a certificate of appealability is **DENIED**, and this case is **DISMISSED**.
IT IS SO ORDERED.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 15, 2020